UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                                          )
LARRY CLARK, SR. and               )          Case No. 04-40239
SANDRA C. CLARK                      )          Chapter 11
                          Debtors         )
_____

## MEMORANDUM

This matter comes before the Court on the Motion for Summary Judgment filed by the Debtors with respect to their Objection to Claim filed by the Robert Anderson Trust ("Trust"). Upon consideration of the motions, the responses filed thereto, and the record in this case, the Court rules as follows:

## I.      STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is proper under 28 U.S.C. §1409(a).

## II.      SUMMARY JUDGMENT STANDARD

The Court can render summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is appropriate when the record taken as a whole, and viewed in the light most favorable to the nonmoving party, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). The party seeking summary judgment bears the burden initially of showing that there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may rely on the pleadings, depositions, answers to interrogatories, and admissions on file. *Id*. When a party fails to make a showing sufficient to

establish the existence of an element essential to that party's case, summary judgment should be granted. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) (quoting *Celotex*, 477 U.S. at 322).

Once the moving party has made a proper motion for summary judgment, the nonmoving party may not rely upon mere allegations to rebut the motion, but instead must set forth specific facts demonstrating that a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e). The nonmoving party must produce more than a "mere scintilla" of evidence to support its claim, once a properly supported motion for summary judgment has been made.

## III.    UNDISPUTED FACTS

1.    Larry "Cotton" Clark, Sr., his son, Larry Clark, and James Williams ("Williams") joined together to build an apartment complex. To do so they formed Mercury Investments & Management, LLC ("Mercury").

2.    In 1999, Mercury borrowed $1,500,000 from the Trust to finance construction of the complex.

3.    Some months earlier, Three Putt Investments, another company in which Cotton held an interest, had borrowed $250,000 from the Trust to finance a separate construction project. All three of the principals identified above personally guarantied the loans in the Trust's favor, as did their spouses, Sandra Clark, Gina Clark, and Linda Williams.

4.    In February of 2001, Cotton and Larry Clark decided to part ways with Williams. They entered a series of agreements with Williams, whereby Williams would acquire Cotton and Larry Clark's interest in Mercury, in exchange for which Williams would release the Cotton and Larry Clark from any obligation going forward. Neither Sandra Clark nor Gina Clark,

2

were included in this agreement, and thus remained liable on the debt.  Additionally, the Trust was also not made a party to this series of accords.

5.    On April 19, 2001, the Trust intervened in a lawsuit against Mercury in state court seeking to enforce the guaranty agreements signed by Cotton Clark, Sandra Clark, Larry Clark, and Gina Clark (collectively the "Clarks") and the Williamses.  This amount was in excess of eight hundred thousand dollars.

6.    Williams and the Trust entered into a Confidential Settlement Agreement whereby Williams agreed to pay $266,000 to the Trust, presumably representing his one-third share of the outstanding debt. Williams would then form a company by the name of Owensboro Acquisitions, LLC, which would execute a promissory note for $550,000 in favor of the Trust.  In exchange, Owensboro Acquisition would receive an assignment of the Trust's rights under the Clark guaranty agreements.  In essence, Williams was buying the Clarks' debt, a debt he was, at least with respect to Cotton and Larry Clark, precluded from pursuing by virtue of the release agreement dated  February, 2001.

7.    In June of 2002, Owensboro Acquisitions, LLC defaulted on the $550,000 promissory note executed in favor of the Trust.  The Trust brought suit against Owensboro Acquisitions, LLC, and obtained a corresponding judgment. Shortly thereafter, the Trust and the Williamses settled their dispute, with Williamses paying $525,000 to the Trust, and taking the contemplated assignment. Williams paid this amount on December 4, 2002.

8.    Owensboro Acquisitions, LLC, as assignee of the judgment, obtained non-wage garnishments against the Clarks, and set out to collect the sums that were ostensibly still owed to the Trust.

9.     The Clarks moved to quash this garnishment, for the reason that it was prohibited by the February 2001 release.  The Daviess Circuit Court agreed with the Clarks that the release prohibited this action, and thus quashed the garnishments.

> The Court finds that the release by its terms prohibits Williams from enforcing the judgment personally or through the wholly owned corporation against the co-releasing parties.

10.    Once Williams realized he could not collect the Clarks' debt, he determined the Trust was not under the same limitations.  Accordingly, he approached Robert Anderson, from whom he had already secured a release, but who still sought collection of about $12,000 in unrecouped attorney fees. Williams proposed rescinding the October, 2001 Confidential Settlement Agreement, and a corresponding relinquishment by Owensboro Acquisitions, LLC of its interest in the Trust's judgment against the Clarks. Once the judgment again belonged to the Trust, Williams, on the Trust's behalf, would try to collect the remainder of the judgment.  From any recovery, he would pay the Trust its $12,000 in attorney fees and would keep any excess.

11.    Williams prepared an Agreement dated June 4, 2003, by which he and the Trust purportedly rescinded the prior settlement negotiated by them and Owensboro Acquisitions, LLC.  Once the Agreement was signed, the Trust again became the owner of the judgment against the Clarks.

12.    Shortly after signing the second Agreement, Williams, on the Trust's behalf, filed a judgment lien against the Clarks, and again proceeded to secure non-wage garnishments for all of the ostensible debt.  The Clarks again moved to quash this garnishment, but the Daviess Circuit Court denied this motion.  The Circuit Court observed that the release

granted by Williams in favor of the Clarks did not prohibit the Trust, a non-party, from trying to collect the debt.  The Clarks appealed.

13.    On February 13, 2004, during the pendency of this appeal, Cotton and Sandra Clark filed for bankruptcy.

13.    On June 8, 2004, the Trust filed a proof of claim in this bankruptcy case in the amount of $892,994.71, with $140,000 designated as secured.

14.    By Opinion dated December 9, 2005, the Kentucky Court of Appeals affirmed the Daviess Circuit Court's ruling.  In so doing, however, the Court of Appeals' Opinion pointed out that while there was no question the Trust had the right to collect the judgment, there was still some question as to the amount actually owed to the Trust.  As the Trust had already collected a substantial sum from Williams, it was unclear how much still remained owing by the Clarks.  To this end, the Court of Appeals remanded the matter back to Daviess Circuit Court to conduct an evidentiary hearing on the accord and satisfaction affirmative defense.

15.    On May 4, 2006, the Debtors objected to the Trust's proof of claim arguing that the Trust had received payment on its claim for which it was not giving credit, essentially raising their accord and satisfaction affirmative defense..

16.    This Court determined to hold the claim objection in abeyance pending a resolution of the evidentiary hearing to be held in Daviess Circuit Court.

17.    On January 12, 2007, the Daviess Circuit Court ruled that a judgment was entered against the Clarks in favor of the Trust for $892,994.71.  A judgment was also entered against Williams and his spouse  for the same amount.  The court further held the Clarks and

Williamses jointly and severally liable for the payment of this judgment. The court also ruled that while Cotton Clark and his son signed a release with Williams, their spouses were not a party to the releases.

18.    The Daviess Circuit Court also found that the Trust has been paid $791,000.00 on the debt by virtue of the settlement and release with Williams.  The Clarkses retained joint and several liability for the balance of the judgment.

19.    Finally, the Daviess Circuit Court ruled as follows:

> The Anderson Trust shall give credit to the Clarks for the amount paid by the Williams on the default judgment.  A constructive trust is imposed on any amounts due or owing to the Williams under the Settlement Agreement with the Anderson Trust for the benefit of Charles L. Clark, Sr. and Charles L. Clark, Jr. to the extent to which the payment to the Anderson Trust is attributable to funds paid by Charles L. Clark, Sr. and/or Charles L. Clark, Jr. The Anderson Trust shall hold such funds and apply then first to any remaining balance due on the judgment and the remainder to be returned to Charles L. Clark, Sr. and Charles L. Clark, Jr.

## IV.    CONCLUSIONS OF LAW

The Debtors now move for summary judgment with respect to their claim objection.  They contend that Robert Anderson, in a deposition under oath, admitted that the proof of claim filed by the Trust is inaccurate.  Specifically, that the Trust is not owed the full $892,994.71 as claimed in its proof of claim.

A proof of claim filed in accordance with the rules constitutes prima facie evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f). Even though a properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim, parties may still object to that claim.  Any party disputing a claim carries the burden of providing evidence of

probative force to overcome the prima facie effect of the properly filed proof of claim.  If the objecting party fails to offer sufficient evidence to overcome the evidentiary effect of the properly filed proof of claim, the objection will be denied and the claim will be allowed as filed. Matter of Texlon, 28 B.R. 525 (Bankr. S.D.N.Y. 1983).

Conversely, if the objecting party does provide sufficient evidence to overcome the prima facie effect of a properly filed proof of claim, the burden shifts back to the claimant to prove the validity and amount of its claim.  In re DeLorean Motor Co. Litigation, 59 B.R. 329 (E.D. Mich. 1986).

In this case, there is no question the Debtors have met their burden of showing sufficient probative evidence to overcome the prima facie effect of the proof of claim filed by the Trust.  Even without the judicial admission by Robert Anderson admitting that the Trust's claim is inaccurate, the finding by the Daviess Circuit Court conclusively establishes that the Trust is not owed $892,994.71 as claimed.  Thus, the burden shifts back to the Trust to prove the validity and amount of its claim.

The Debtors contend the Trust's claim is limited to the $12,000 in unrecouped attorney fees. The Trust contends it is still owed the balance of the judgment, as held by the Daviess Circuit Court, approximately $383,483.93 as of September 13, 2006.  Considering the constructive trust language used in the January 12, 2007 Order from the Daviess Circuit Court, this Court is unable to determine the exact amount of the Trust's claim at this time.  Consequently, the Court will hear oral arguments from the parties on this issue on March 14, 2007 at 9:00 AM (Central Time) at Owensboro Courthouse, U. S. Courthouse, 423 Frederica Street, Owensboro, Kentucky to determine whether to conduct an evidentiary hearing or consider other avenues to finalize the dispute between the

parties.  The Court shall enter an Order this same date in accordance with the holding of this Memorandum.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE:                                      )
LARRY CLARK, SR. and                        )          Case No. 04-40239
SANDRA C. CLARK                             )          Chapter 11
                            Debtors.        )

_____

## ORDER

        Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference,

        It is hereby **ORDERED** the Debtors' Motion for Summary Judgment is **OVERRULED**.

        It is further **ORDERED** that a preliminary hearing will be held on March 14, 2007 at 9:00 AM (Central Time) at Owensboro Courthouse, U. S. Courthouse, 423 Frederica Street, Owensboro, Kentucky to determine how to proceed with this dispute.